UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:14-CR-00029-GNS-1

UNITED STATES OF AMERICA                                                   PLAINTIFF

v.

MARIA CHAVEZ SALAZAR                                                        DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant's Motion to Suppress (DN 59).  For the reasons discussed below, the Court **DENIES** Defendant's motion.[1]

## I.        SUMMARY OF FACTS AND CLAIMS

In general, the parties do not dispute facts relating to the present motion.  On August 7, 2012, Defendant Maria Chavez Salazar ("Salazar") was interviewed by U.S. Secret Service Special Agent Thomas Finn ("Finn") for approximately one hour and thirty-seven minutes. (Def.'s Mot. to Suppress 1, DN 59; Pl.'s Resp. to Mot. to Suppress 1, DN 61).  Three additional law enforcement officers—including a Spanish-speaking Bowling Green Police Department detective—were present during the interview.  (Pl.'s Resp. to Mot. to Suppress 1).  During the course of the interview, the detective attempted to serve as an interpreter for Salazar because she does not speak English.  (Def.'s Mot. to Suppress 1; Pl.'s Resp. to Mot. to Suppress 1).  The

---

[1] "A Motion to Suppress is appropriate 'when evidence sought to be introduced in a criminal case is alleged to have been unlawfully obtained.'"  *United States v. Guzman*, No. 5:10-CR-00020, 2011 WL 1899767, at *1 (W.D. Ky. May 19, 2011) (citation omitted).  When the issue is accuracy, it is an issue of "reliability and not the lawfulness of the evidence."  *See id.* (citation omitted).  Given the nature of the arguments raised by Defendant, the Court will treat the present motion as a motion to exclude evidence.

interview was preserved by both audio and video recording.  (Def.'s Mot. to Suppress 1; Pl.'s Resp. to Mot. to Suppress 1; Pl.'s Resp. to Mot. to Suppress Ex. 1, DN 61-1).  Salazar was not detained after the completion of the interview.  (Pl.'s Resp. to Mot. to Suppress 1).

Subsequently, on December 10, 2014, a grand jury sitting in the Western District of Kentucky indicted Salazar and her two co-Defendants on two federal counts:  (1) "knowingly and willfully enter[ing] into an agreement, a combination, and a conspiracy with each other to defraud the Internal Revenue Service . . . by obtaining and aiding to obtain the payment and allowance of false, fictitious, and fraudulent claims" in violation of 18 U.S.C. § 286; and (2) "devis[ing] a scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations, and promises, to wit, [she and others] filed false tax returns for individuals who were not living or working in the United States to obtain fraudulent tax refunds" in violation of 18 U.S.C. § 1341.  (Indictment ¶¶ 1, 12, DN 1).

During discovery, Salazar's counsel questioned the accuracy of the translations during her interview, which led to the preparation of a transcript from the interviews, and the United States acknowledges that there were translation issues.  (Def.'s Mot. to Suppress 1-2; Pl.'s Resp. to Mot. to Suppress 1-2).  As the United States has explained:

> Based on [Defendant's] concerns, the United States contracted to have the interview transcribed and translated.  On September 8, 2015, the United States received an initial draft of the translation.  This initial draft only contained English utterances and an English translation of Spanish utterances.  This draft was revised on December 28, 2015, to include Spanish utterances listed in a column next to the English translation of the Spanish utterances.  *See* Exhibit 3.  Both translation transcripts were provided to defense counsel shortly after receipt by the United States.  Defense counsel had reservations regarding the quality of the translation transcript provided by the United States, and commissioned another translation transcript.  Defendant's translator appears to have used the revised transcript provided by the United States, and made edits based on his review of the video-recorded interview.

(Pl.'s Resp. to Mot. to Suppress 2 (citing DN 59-2)).  In the present motion, Defendant's counsel has moved to suppress the entire interview.  (Def.'s Mot. to Suppress 3).

## II.   DISCUSSION

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  This rule encompasses issues relating to the reliability of proffered evidence.  *See, e.g.*, *Guzman*, 2011 WL 1899767, at \*2 ("[A] [*Daubert*] hearing would [] [] involve a Motion to Exclude evidence, which is the appropriate way to challenge evidence that may be unreliable under the Federal Rule of Evidence."); *United States v. N. Am. Reporting, Inc.*, 740 F.2d 50, 54 (D.C. Cir. 1984) ("When, as here, the 'evidence' summarized derives from such diverse sources, of various shades of unreliability, including mere surmise, undocumented recollection and questionable assumptions, we do not think the district judge abused her discretion in preventing the exhibit from influencing the jury.").  In analyzing this issue, however, the Court must be mindful that in some instances issues of reliability may be more properly characterized as issues of trustworthiness which fall within the exclusive province of the jury.  *See United States v. Pinalto*, 771 F.2d 457, 459 (10th Cir. 1985) ("The [trial] court invaded the province of the jury when it suppressed the Pinalto tapes because it found them unreliable.").

In support of her motion, Salazar cites only one case—the Supreme Court's decision in *Solem v. Stumes*, 465 U.S. 638 (1984).  (Def.'s Mot. to Suppress 2-3).  Based upon this Court's review of *Solem*, however, *Solem* is not dispositive of the issue in this case.  In *Solem*, a murder suspect in Wisconsin was arrested for an unrelated murder in South Dakota.  *See Solem*, 465 U.S.

3

at 639.   After receiving the *Miranda* warnings, the suspect voluntarily participated in police interrogations until the suspect asserted his right to remain silent.  *See id.* at 639-40.  Later that day, the officers returned and resumed questioning without administering the *Miranda* warnings. *See id.* at 640.  On the following day, the officers administered the *Miranda* warnings before transporting the suspect from Wisconsin to South Dakota.  *See id.*  During the trip, the officers again questioned the suspect regarding the murder.  *See id.*  After the suspect was charged with murder, the trial court refused to exclude his statements.  *See id.* at 641.  Following the suspect's murder conviction, his conviction was affirmed on direct appeal.  *See id.*  During the pendency of his habeas corpus action, the Supreme Court issued its decision in *Edwards v. Arizona*, 451 U.S. 477 (1981), holding that any subsequent conversations relating to a crime must be initiated by the suspect once he or she invokes the right to counsel.  *See id.* 485-87.  In *Solem*, the Supreme Court declined to apply *Edwards* retroactively.  *See Solem*, 465 U.S. at 650.

In the case *sub judice*, Defendant has neither alleged that she was not provided the *Miranda* warnings[2] nor that the interview was resumed by the officers after she invoked her right to counsel.  Thus, any reliance on *Solem* is inapposite.

The United States has cited to *State v. Sanchez-Diaz*, 683 N.W.2d 824 (Minn. 2004), to support the proposition that Court should not exclude the translations from the interview *in toto*. Rather, the United States argues that Court should permit the parties to challenge specific statements and their translations in determining whether those statements would be admissible at trial.  (Pl.'s Resp. to Mot. to Suppress 3-4).  In *Sanchez-Diaz*, the defendant stabbed his pregnant girlfriend to death.  *See id.* at 827-28.  When the defendant arrived at the hospital, he also exhibited stab wounds and received emergency treatment.  *See id.* at 828.  Using a non-state

---

[2] To the contrary, the United States has provided the written *Miranda* warnings issued to Defendant in Spanish which she signed.  (Pl.'s Resp. to Mot. to Suppress Ex. 2, DN 61-2).

certified interpreter, the police took a statement from the defendant while at the emergency room in which the defendant alleged that his girlfriend was the aggressor. *See id.* Two days later, the defendant made additional incriminating statements to law enforcement officers through the same interpreter. *See id.*

After the defendant was charged with the murder of his girlfriend and the unborn child, two court-appointed interpreters discovered significant errors in the translations during the interviews. *See id.* at 828-29. The trial court appointed an expert translator to review the tapes of the interviews for the purpose of creating a new transcript comparing the original and new transcripts. *See id.* at 828. While the expert translator identified significant errors in the translations, the trial court denied the motion to exclude the evidence in its entirety. *See id.* at 829. After redacting portions of the tapes and transcripts, the court allowed the jury to hear the tapes and see the transcript to determine the accuracy of the evidence. *See id.* at 830. After the defendant was convicted of both crimes, he appealed and challenged, *inter alia*, the admissibility of the interrogation evidence. *See id.*

The Minnesota Supreme Court held that the translation issue was more properly characterized as a deprivation of the defendant's right to a fair trial. *See id.* at 835. Based upon the circumstances of that case, the court found that none of the mistakes in the translation ultimately "changed the fundamental nature of appellant's confession" and did not deny the defendant's right to a fair trial. *Id.* at 836, 837 (citation omitted). The Minnesota Supreme Court, however, suggested that the jury should have either received the corrected transcripts or been instructed to disregard any portion of the original transcript containing errors. *See id.*

In this case, the Court believes that it would be an abuse of discretion to exclude the interview in its entirety. The Court is inclined to follow the method suggested in *Sanchez-Diaz*

5

of only introducing the corrected transcript at trial.  The parties have discussed translation issues relating to the interview, and the United States has offered in its response that it "is willing to agree to exclude the portions of the interview that are misleading or confusing given the actual Spanish-language conversation between the interpreter and Defendant."  (Pl.'s Resp. to Mot. to Suppress 4).   The parties should continue their discussions relating to the accuracy of the translations, and prior to trial, the parties may raise specific objections to the Court.  For these reasons, the Court denies Defendant's motion to exclude the interview in its entirety.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress (DN 59) is **DENIED**.   At the appropriate time, however, the Court will entertain subsequent motions relating to exclusion of specific statements or translations from the interview.

**Greg N. Stivers, Judge**
**United States District Court**
May 18, 2016

cc:      counsel of record